

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) **FAGRON, INC.,**                              )
                                                  )
(2) **FREEDOM PHARMACEUTICALS,**                  )
**INC.,**                                         )
                                                  )        Case No.
                                                  )
         **PLAINTIFFS,**                           )
    **V.**                                         )         **16 CV - 76 CVE - TLW**
                                                  )
(1) **INTEGRITY**                                 )
**PHARMACEUTICALS, LLC D/B/A**                    )
**VERACITY PHARMACEUTICALS,**                     )
                                                  )
(2) **CURTIS COLE,**                              )
                                                  )
(3) **GREGORY ADAM WEAVER, AND**                  )
                                                  )
(4) **JASON F. DUNN,**                            )
                                                  )
         **DEFENDANTS.**                           )

**F I L E D**

FEB 0 8 2016

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Fagron, Inc. ("Fagron") and Freedom Pharmaceuticals, Inc. ("Freedom")

(collectively, "Plaintiffs") for their Complaint against Defendants Integrity Pharmaceuticals,

LLC d/b/a Veracity Pharmaceuticals ("Veracity"), Curtis Cole, Jason F. Dunn, and Gregory

Adam Weaver (collectively, "Defendants"), allege as follows:

### PARTIES

1.      Fagron is a corporation duly organized and existing under the laws of the State of

Minnesota, with its principal place of business in St. Paul, Minnesota.

2.      Freedom is a corporation duly organized and existing under the laws of the State

of Oklahoma, with its principal place of business in Broken Arrow, Oklahoma.  Freedom is a

wholly-owned subsidiary of Fagron.

3.      Upon information and belief, Defendant Integrity Pharmaceuticals, LLC is an Oklahoma limited liability company with its principal place of business in Tulsa, Oklahoma. Upon information and belief, Integrity Pharmaceuticals, LLC is doing business as Veracity Pharmaceuticals.

4.      Upon information and belief, Defendant Curtis Cole is an individual citizen and resident of the State of Oklahoma.

5.      Upon information and belief, Defendant Jason F. Dunn is an individual citizen and resident of the State of Oklahoma.

6.      Upon information and belief, Defendant Gregory Adam Weaver is an individual citizen and resident of the State of Oklahoma.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over each of the Defendants because they are citizens and residents of this State.

8.      This Court has subject matter jurisdiction over this action upon the following grounds:

    (a)     28 U.S.C. § 1331, this being a civil action arising under the laws of the United States; and

    (b)     28 U.S.C. § 1367(a), this being a civil action including claims that are so related to claims that are within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all Defendants are residents of this State and, upon information and belief, reside in this judicial

district.  Additionally, venue is proper because a substantial part of the events giving rise to the

Plaintiffs' claims occurred in this judicial district.

## NATURE OF THE CASE

10.     This action arises from the Defendants' misappropriation of Plaintiffs' trade

secrets, unauthorized access and damage to Plaintiffs' protected computer system, and violations

of restrictive covenants.  Defendants engaged in a surreptitious plot to misappropriate trade

secrets and confidential information while they were employed at Freedom, so that the

Defendants could use the stolen materials to form a competitive enterprise.  This action arises

from the Defendants' (1) misappropriation of Plaintiffs' trade secrets, (2) violation of the

Computer Fraud and Abuse Act (18 U.S.C. § 1030), and (3) breaches of non-compete and

confidentiality agreements with Freedom.

11.     Plaintiffs are custom suppliers of fine compounding chemicals, excipients, pre-

made bases, and capsules.  Plaintiffs specialize in the custom wholesale distribution of premium

compounding products.

12.     The individual defendants in this action – Cole, Dunn, and Weaver (collectively,

the "Individual Defendants") — are former employees of Freedom.

13.     Upon information and belief, while they were employed with Freedom, the

Individual Defendants formed Veracity in September 2015 to compete with Plaintiffs in the

distribution of premium compounding products.

14.     In preparation to launch Veracity, Defendants' stole a massive amount of

Plaintiffs' trade secrets.

15.     Further, upon information and belief, Defendants, without authorization and/or

exceeding authorized access, intentionally accessed Plaintiffs' protected computers and also

engaged in conduct that caused damage to Plaintiffs' protected computers by installing malicious software or "malware" to disrupt Plaintiffs' computer operations, gather sensitive information, and/or gain access to Plaintiffs' trade secrets and confidential information without Plaintiffs' authorization or consent.

16.     In addition to their misappropriation of trade secrets and intentional data breach, Weaver and Cole have breached their contracts with Freedom.  Specifically, Weaver breached his confidentiality and nondisclosure agreement with Freedom, and Cole and Weaver both breached their non-competition agreements with Freedom.

## FACTUAL ALLEGATIONS

### The Individual Defendants' Employment and Agreements with Freedom

17.     Plaintiffs are custom suppliers of fine compounding chemicals, excipients, pre-made bases, and capsules.

18.     Cole was employed by Freedom from approximately December 18, 2011 to November 17, 2015.  His job title was Director of Business Development.

19.     Dunn was employed by Freedom from approximately May 29, 2013 to November 16, 2015.  His job title was Director of Compliance.

20.     Weaver was employed by Freedom from approximately October 1, 2010 to November 16, 2015.  His job title was Director of Operations.

21.     On March 22, 2013, in connection with his employment with Freedom, Weaver entered into a Confidentiality and Nondisclosure Agreement with Freedom, a copy of which is attached hereto as Exhibit 1 ("Confidentiality Agreement").

22.    Under paragraph 1 of his Confidentiality Agreement, Weaver agreed to keep confidential various types of information relating to Freedom's business defined as "Confidential Information" and including:

> all information or data, whether disclosed by [Freedom] to [Weaver] at any time orally, in writing, or in electronic format, and whether or not marked as "confidential" or "proprietary," in any way related to the business affairs of [Freedom] that is not generally available to other employees of [Freedom] (excluding any [Freedom] employee who is also a [Freedom] stockholder) . . . . The term Confidential Information shall not include information that (i) is or becomes public knowledge through no act or omission of Recipient; or (ii) is received by, or otherwise made available to, Recipient from a third party who does not owe a duty of confidentiality to [Freedom] in connection with the Confidential Information disclosed.

*See* Ex. 1, ¶ 1.

23.    In paragraph 2 entitled "Nondisclosure of Confidential Information," Weaver agreed not to "disclose to any other person or entity the Confidential Information or the fact that discussions between [Freedom] and [Weaver] are taking place regarding such Confidential Information, or use the Confidential Information for any purpose other than [to perform certain aspects of Weaver's employment]. *See* Ex. 1 ¶ 2.

24.    Weaver further agreed that Freedom would be entitled to "appropriate equitable relief in addition to whatever remedies it might have at law, including, without limitation, attorneys' fees, in connection with any breach or enforcement of [Weaver's] obligations" under the Confidentiality Agreement. *See* Ex. 1 ¶ 3.

25.    On April 29, 2013, Weaver and Cole entered into separate letter agreements with Freedom that provided Weaver and Cole with significant monetary bonuses (contingent upon continued employment with Freedom) in exchange for their acceptance of non-competition agreements. *See* Ex. 2 (Weaver's "Non-Compete Agreement") and Ex. 3 (Cole's "Non-Compete

Agreement"). The relevant terms of Weaver's Non-Compete Agreement and Cole's Non-

Compete Agreement are identical, and provide that:

> [Y]ou agree that during the term of your employment with
> Freedom, and for a period of 90 days thereafter, you will not,
> directly or indirectly, for yourself or any other person or entity
> (i) engage or invest in, own, manage, operate, finance, control, or
> participate in the ownership, management, operation, financing, or
> control of, be associated or in any manner connected with, accept
> business from any business or person whose products, services or
> activities compete in whole or in part with the products, services or
> activities of Freedom, (ii) solicit, attempt to solicit or accept the
> business of any of Freedom's customers, prospective customers,
> suppliers, vendors or other parties with whom Freedom has a
> business relationship, or otherwise induce any such parties to
> reduce, terminate, or restrict or alter their business relationships
> with Freedom, or (iii) induce or attempt to induce any employee,
> consultant, contractor or agent of Freedom to leave the
> employment or service of Freedom.

*See* Exs. 2 & 3.

**Plaintiffs' Trade Secrets**

26.     The Individual Defendants had access to a substantial amount of Plaintiffs' trade

secrets and confidential information, including, among other things, compounding recipes,

detailed proprietary product information, proprietary chemical research and analysis, new

chemical lists, customer lists, detailed sales reports and sales records by customer, product lists,

customer pricing lists, marketing plans, marketing strategy presentations, direct mailer lists,

training materials, and reports of transactions (collectively, Plaintiffs' "Trade Secret

Information").

27.     Plaintiffs' Trade Secret Information constitutes trade secrets under the Oklahoma

Uniform Trade Secrets Act.

28.     Plaintiffs' Trade Secret Information is not known or shared outside the business.

Plaintiffs consider their Trade Secret Information to be confidential and trade secrets, and

Plaintiffs employ various measures to maintain the confidentiality of the Trade Secret Information.

29.     Plaintiffs restrict access to the Trade Secret Information to only certain employees of Plaintiffs on a need-to-know basis.  Additionally, the Trade Secret Information is stored on Plaintiffs' password-protected and secure computer network.  Additionally, all Freedom employees who have access to any of the Trade Secret Information are required to sign an Employee Handbook that requires the employees to maintain the confidentiality of Plaintiffs' Trade Secret Information and other confidential information.   The Employee Handbook expressly states that a violation of Freedom's policy prohibiting transmission of confidential information (including the Trade Secret Information) to unauthorized recipients "will result in immediate termination of employment."

30.     Any visitors to Plaintiffs' offices are not permitted to access the Trade Secret Information.

31.     Plaintiffs' Trade Secret Information would be extremely valuable to competitors. It would allow Plaintiffs' competitors to, among other things, ascertain proprietary product information and sales information that would give competitors an unfair advantage.  For example, disclosure of Plaintiffs' proprietary compounding recipes or chemical research and analysis to a competitor would allow the competitor to unfairly compete with Plaintiffs without having to invest in its own research and product development.   Similarly, disclosure of Plaintiffs' sales records by customer, customer pricing lists and marketing plans to a competitor would allow the competitor to unfairly compete for Plaintiffs' customers by undercutting otherwise confidential prices and margins.

**Defendants' Misappropriation of Plaintiffs' Trade Secret Information**

32.     Upon information and belief, during their employment with Freedom, the Individual Defendants decided to start Veracity.  Upon information and belief, Defendants intend to officially launch Veracity in February 2016 and have been working for months to launch the competing venture.

33.     Upon information and belief, Defendants intend for Veracity to compete directly with Plaintiffs in marketing and selling compounding products and related services directly to compounding pharmacies.

34.     In their efforts to prepare for and launch Veracity, and unbeknownst to Plaintiffs, Defendants employed a scheme to steal Plaintiffs' Trade Secret Information and Confidential Information prior to the Individual Defendants' resignations from Freedom in mid-November 2015.

35.     On November 11, 2015, Cole, acting on behalf of all Defendants, accessed hundreds of files containing Plaintiffs' Trade Secret Information and Confidential Information that were stored on Plaintiffs' secure server.  Five days later, the day before he resigned, Cole transferred Plaintiffs' data from his Freedom-issued computer to two personal USB drives.

36.     On November 17, 2015, Cole resigned from his employment with Freedom.

37.     Upon information and belief, the data Cole transferred to his USB drives on November 16, 2015 included a massive amount of Plaintiffs' Trade Secret Information and Confidential Information.

38.     Upon information and belief, Cole subsequently shared with or disclosed to Dunn, Weaver and Veracity the Trade Secret Information and Confidential Information that he stole from Plaintiffs for purposes of launching Veracity.

39.     Plaintiffs first discovered Defendants' activity in January 2016, which led to Plaintiffs' investigation and discovery of the Individual Defendants' efforts to launch Veracity during and after their employment with Freedom.

40.     Based on further investigation by Plaintiffs, Plaintiffs now have documentary evidence of Cole's theft of Plaintiffs' Trade Secret Information and Confidential Information.

41.     Upon information and belief, Defendants have used and inevitably will use Plaintiffs' Trade Secret Information and Confidential Information to launch Veracity, compete with Plaintiffs, and solicit Plaintiffs' customers.

42.     Additionally, in an effort to conceal from Plaintiffs that Defendants were plotting a scheme to form Veracity based on the purloined Trade Secret Information, Defendants labeled the electronic files relating to Veracity as "Project X." Upon information and belief, "Project X" relates to Defendants' efforts to launch Veracity.

43.     At least Defendant Cole accessed and used numerous files on his Freedom computers relating to "Project X" in the months leading up to his resignation, as well as a file labeled "Business-Plan-for-a-Startup."

**Defendants' Unauthorized Access and Damage to Plaintiffs' Protected Computers**

44.     In mid-November 2015, shortly before the Individual Defendants resigned from their employment with Freedom, Plaintiffs discovered a serious breach of their computer systems. Specifically, an unauthorized user identified as "Temp" had been created to access Plaintiffs' computer servers. Further, the "Temp" user had installed malware on Plaintiffs' server that could cause significant business disruption and could threaten the security and confidentiality of Plaintiffs' Trade Secret Information and Confidential Information.

45.     Upon information and belief, one or more of the Individual Defendants created the Temp user profile on behalf of all Defendants.

46.     Defendants did not have Plaintiffs' authorization to create user profiles or install malware on Plaintiffs' server.

### FIRST CAUSE OF ACTION
**Misappropriation of Trade Secrets (Okl. Stat. tit. 78, § 85, et seq.)**
**Against All Defendants**

47.     The allegations of paragraphs 1 through 46 above are incorporated by reference herein.

48.     Plaintiffs' Trade Secret Information constitutes trade secrets under the Oklahoma Uniform Trade Secret Act, Okl. Stat. tit. 78 § 85, *et seq.*

49.     Plaintiffs' Trade Secret Information derives independent economic value, actual or potential, from not being generally known to or ascertainable by proper means by Plaintiffs' competitors who can obtain economic value from its disclosure or use.

50.     Plaintiffs make reasonable efforts to maintain the secrecy of its Confidential Information and Trade Secret Information.

51.     Plaintiffs' Trade Secret Information is not generally known outside of certain of Plaintiffs' employees.

52.     Plaintiffs' Trade Secret Information is shared with employees only on a need-to-know basis and is not accessible by all of Plaintiffs' employees.

53.     Plaintiffs employ numerous measures to protect the secrecy of their Trade Secret Information including by (1) storing the Trade Secret Information on a password-protected and secure computer network, (2) requiring all employees with access to the Trade Secret Information to sign and acknowledge Freedom's Employee Handbook, which includes detailed

confidentiality and non-disclosure policy protecting Plaintiffs' Trade Secret Information, (3) prohibiting the removal of Plaintiffs' Trade Secret Information from Freedom's premises without permission, and (4) prohibiting disclosure to anyone except as authorized. Additionally, Plaintiffs requires that all Freedom employees agree to (1) return all Trade Secret Information and documents in their possession and (2) not utilize or exploit the Trade Secret Information with any other individual or company.

54.     Defendants misappropriated Plaintiffs' Trade Secret Information in that they acquired them with knowledge or reason to know that the Trade Secret Information was acquired by improper means without Plaintiffs' authorization or consent.

55.     Defendants misappropriated Plaintiffs' Trade Secret Information in that they (1) disclosed and/or used the Trade Secret Information without Plaintiffs' express or implied consent and (2) used improper means to acquire the Trade Secret Information.

56.     Cole misappropriated Plaintiffs' Trade Secret Information in that he (1) downloaded and/or used the Trade Secret Information for the benefit of all Defendants in their efforts to launch Veracity without Plaintiffs' express or implied consent and (2) at the time of his acquisition and/or use, knew or had reason to know that his knowledge of the Trade Secret Information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

57.     Weaver, Dunn and Veracity misappropriated Plaintiffs' Trade Secret Information in that they (1) acquired and/or used the Trade Secret Information without Plaintiffs' express or implied consent and (2) at the time of the acquisition and/or use, knew or had reason to know that the Trade Secret Information was acquired and/or used through Cole's improper means.

58.     Defendants' acquisition, disclosure, and use of Plaintiffs' Trade Secret Information was intentional and premeditated.

59.     Unless restrained and enjoined from continuing their efforts to compete with Plaintiffs, it is inevitable that Defendants will use or disclose of Plaintiffs' Trade Secret Information.

60.     Unless enjoined, Defendants' inevitable disclosure and use of Plaintiffs' Trade Secret Information threatens Plaintiffs with irreparable harm for which they have no adequate remedy at law by depriving Plaintiffs of control over and exclusive use of their Trade Secret Information.

61.     Plaintiffs have been damaged by Defendants' misappropriation of Plaintiffs' Trade Secret Information.

62.     Defendants have been unjustly enriched by their misappropriation of Plaintiffs' Trade Secret Information.

63.     Upon information and belief, Defendants' conduct was willful, malicious, outrageous, deliberate and made with full knowledge of, and total disregard for, Freedom's rights, and in bad faith, and therefore the statutory punitive damages and attorneys' fees provided for in Okla. Stat. tit. 78, § 88(B) and 89 are justified.

64.     Accordingly, Plaintiffs are entitled to recover damages based on their actual loss, the unjust enrichment caused by Defendants' misappropriation, and a reasonable royalty, plus punitive and exemplary damages and reasonable attorney's fees, as well as injunctive relief.

## SECOND CAUSE OF ACTION
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030
### Against All Defendants

65.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 64 above as if set forth herein.

66.     Plaintiffs maintain one or more computers and computer networks that are used in and/or that are affecting interstate commerce.

67.     Upon information and belief, at least one of the Defendants—acting on behalf of all Defendants—intentionally accessed Plaintiffs' protected computer server without authorization or by means that exceeded their authorized use.

68.     Additionally, upon information and belief, at least one of the Individual Defendants—acting on behalf of all Defendants—engaged in conduct that resulted in a security breach to Plaintiffs' computer servers.  Contemporaneously with the time of the Individual Defendants' resignation from Freedom, Plaintiffs discovered that a suspicious "Temp" user had installed malware on Plaintiffs' server that could cause significant business disruption and could threaten the security and confidentiality of Plaintiffs' Trade Secret Information and Confidential Information.

69.     Defendants have violated at least 18 U.S.C. § 1030(a)(2)(C) and (a)(5)(A)-(C).

70.     Defendants' conduct has caused damages and loss of at least $5,000 over the past year.

### THIRD CAUSE OF ACTION
Breach of Confidentiality Agreement Against Weaver

71.     The allegations of paragraphs 1 through 70 above are incorporated by reference herein.

72.     Weaver's Confidentiality Agreement is a valid and binding contract between Weaver and Freedom.

73.     Freedom fully performed its obligations under the Confidentiality Agreement with Weaver.

74.     Weaver breached his Non-Compete Agreement by (1) disclosing the Confidential Information obtained from Freedom to other persons or entities for a purpose other than Weaver's employment with Freedom and/or (2) using Freedom's Confidential Information for a purpose other than Weaver's employment with Freedom.

75.     Freedom suffered and will continue to suffer damages as a result of Weaver's breaches of the Confidentiality Agreement.

76.     Freedom is entitled to preliminary and permanent injunctive relief and damages under the terms of the Confidentiality Agreement and Oklahoma law.

### FOURTH CAUSE OF ACTION
Breach of Non-Compete Agreement Against Weaver

77.     The allegations of paragraphs 1 through 76 above are incorporated by reference herein.

78.     Weaver's Non-Compete Agreement is a valid and binding contract between Weaver and Freedom.

79.     Freedom fully performed its obligations under the Non-Compete Agreement with Weaver.

80.     Weaver breached his Non-Compete Agreement by engaging or investing in, owning, managing, operating, financing, controlling, participating in the ownership, management, operation, financing, or control of, and/or being associated or connected with Veracity, a business whose products, services or activities compete with the products, services or activities of Freedom, during the term of his employment with Freedom.

81.     Weaver has further breached his Non-Compete Agreement by engaging or investing in, owning, managing, operating, financing, controlling, participating in the ownership, management, operation, financing, or control of, and/or being associated or connected with Veracity, a business whose products, services or activities compete with the products, services or activities of Freedom, during the 90-day period following the termination of his employment with Freedom.

82.     Freedom suffered and will continue to suffer damages as a result of Weaver's breaches of the Non-Compete Agreement.

83.     Freedom is entitled to preliminary and permanent injunctive relief and damages for Weaver's breaches of the Non-Compete Agreement under Oklahoma law.

## FIFTH CAUSE OF ACTION
Breach of Non-Compete Agreement Against Cole

84.     The allegations of paragraphs 1 through 83 above are incorporated by reference herein.

85.     Cole's Non-Compete Agreement is a valid and binding contract between Cole and Freedom.

86.     Freedom fully performed its obligations under the Non-Compete Agreement with Cole.

87.     Weaver breached his Non-Compete Agreement by engaging or investing in, owning, managing, operating, financing, controlling, participating in the ownership, management, operation, financing, or control of, and/or being associated or connected with Veracity, a business whose products, services or activities compete with the products, services or activities of Freedom, during the term of his employment with Freedom.

88.     Weaver has further breached his Non-Compete Agreement by engaging or investing in, owning, managing, operating, financing, controlling, participating in the ownership, management, operation, financing, or control of, and/or being associated or connected with Veracity, a business whose products, services or activities compete with the products, services or activities of Freedom, during the 90-day period following the termination of his employment with Freedom.

89.     Freedom suffered and will continue to suffer damages as a result of Cole's breaches of the Non-Compete Agreement.

90.     Freedom is entitled to preliminary and permanent injunctive relief and damages for Cole's breaches of the Non-Compete Agreement under Oklahoma law.

**WHEREFORE,** Plaintiffs Freedom Pharmaceuticals, Inc. and Fagron, Inc. respectfully pray that this Court enter judgment in their favor and against Defendants Integrity Pharmaceuticals, LLC d/b/a Veracity Pharmaceuticals, Curtis Cole, Jason F. Dunn, and Gregory Adam Weaver, jointly and severally, as follows:

A.      Compensatory damages for Defendants' misappropriation of Plaintiffs' Trade Secret Information and other trade secrets;

B.     Preliminary and permanent injunctions enjoining Defendants from directly or indirectly:

(1)     disclosing or making any use whatsoever of any trade secrets and all other information of a business, financial, marketing, technical or other nature relating to the business of Plaintiffs, including, without limitation, any of Plaintiffs' Trade Secrets, and other materials or information related to Plaintiffs or activities of Plaintiffs which are not generally known to others engaged in similar business or activities; and

(2)     competing with Plaintiffs in the market for compounding chemicals, excipients, pre-made bases and capsules or custom wholesale distribution of premium compounding products for a period of 2 years to avoid the inevitable disclosure of Plaintiff's Trade Secret Information.

C.     An Order requiring Defendants to immediately return to Plaintiffs any and all property of Plaintiffs, including any Trade Secret Information and other trade secrets;

D.     An Order requiring Defendants to disclose to Plaintiffs, and provide an accounting concerning, the nature and extent of all Trade Secret Information, and other trade-secret documents and information that were acquired, disclosed, and/or used by Defendants;

E.     An Order requiring Defendants to permit Plaintiffs to make copies or mirror images of their hard drives, and search their emails accounts for emails relating in any way to (i) Plaintiffs, (ii) the Trade Secret Information or trade secrets belonging to Plaintiffs, (iii) Defendants' efforts to form Veracity, and/or (iv) the claims asserted by Plaintiffs against Defendants and all other evidence relevant to any of those claims;

F.     Punitive damages against Defendants under Oklahoma Statutes, title 78 § 88(B)
       for their intentional, willful, and malicious misappropriation of Plaintiffs' trade
       secrets as set forth in this Verified Complaint;

H.     Attorney's fees and costs against Defendants under Oklahoma Statutes, title 78 §
       89 for their intentional, willful and malicious misappropriation of Plaintiffs' trade
       secrets as set forth in this Verified Complaint;

I.     Compensatory damages against Weaver for breach of his Confidentiality
       Agreement with Freedom;

J.     Preliminary and permanent injunctions enjoining Weaver from (1) further
       disclosing to any other person or entity the Confidential Information and (2) using
       Freedom's Confidential Information for any purpose;

K.     Compensatory damages against Weaver for breach of his Non-Compete
       Agreement with Freedom;

L.     Preliminary and permanent injunctions enjoining Weaver—for a period of 90
       days following entry of an injunction—from engaging or investing in, owning,
       managing, operating, financing, controlling, participating in the ownership,
       management, operation, financing, or control of, and/or being associated or
       connected with any business or person whose products, services or activities
       compete with the products, services or activities of Freedom; (ii) accepting
       business from any business or person whose products, services or activities
       compete in whole or in part with the products, services or activities of Freedom,
       (iii) soliciting, attempting to solicit or accept the business of any of Freedom's

customers, prospective customers, suppliers, vendors or other parties with whom Freedom has a business relationship, or otherwise inducing any such parties to reduce, terminate, or restrict or alter their business relationships with Freedom, and (iv) inducing or attempting to induce any employee, consultant, contractor or agent of Freedom to leave the employment or service of Freedom;

M.   Compensatory damages against Cole for breach of his Non-Compete Agreement with Freedom;

N.   Preliminary and permanent injunctions enjoining Cole—for a period of 90 days following entry of an injunction—from engaging or investing in, owning, managing, operating, financing, controlling, participating in the ownership, management, operation, financing, or control of, and/or being associated or connected with any business or person whose products, services or activities compete with the products, services or activities of Freedom; (ii) accepting business from any business or person whose products, services or activities compete in whole or in part with the products, services or activities of Freedom, (iii) soliciting, attempting to solicit or accept the business of any of Freedom's customers, prospective customers, suppliers, vendors or other parties with whom Freedom has a business relationship, or otherwise inducing any such parties to reduce, terminate, or restrict or alter their business relationships with Freedom, and (iv) inducing or attempting to induce any employee, consultant, contractor or agent of Freedom to leave the employment or service of Freedom;

O.   Awarding pre-judgment interest and post-judgment interest at the highest legal rate thru the date of payment of the judgment; and

-19-

P.     Such other and further relief as the Court deems appropriate.

Dated:  February 8,k 2016                    Respectfully submitted,

By: _____

John J. Carwile (Oklahoma Bar No. 10757)
James P. McCann (Oklahoma Bar No. 5865)
McDonald, McCann, Metcalf & Carwile, LLP
15 East Fifth Street, Suite 1400
Tulsa, OK 74103
Tel:  (918) 430-3700
Fax: (918) 430-3770
Email: jcarwile@mmmsk.com
           jmccann@mmmsk.com

Benjamin F. Sidbury (*pro hac vice* forthcoming)
Margaret K. Thies (*pro hac vice* forthcoming)
BRYAN CAVE LLP
301 S. College St., Suite 3900
Charlotte, NC 28202
Phone:  (704) 749-8939
Fax:  (704) 749-9339
Email: ben.sidbury@bryancave.com
           peggy.thies@bryancave.com

*Attorneys for Plaintiff Freedom Pharmaceuticals, Inc. and Fagron, Inc.*

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby requests a

trial by jury as to all issues so triable.

_____
*Attorney for Plaintiffs Freedom Pharmaceuticals, Inc. and Fagron, Inc.*
6503812